UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., <br><br>        Plaintiff, <br><br>   v. <br><br>FOX HOLLOW APPAREL GROUP, LLC, a New York corporation, PARIGI GROUP, LTD., a New York corporation; KOLONAKI, INC., a California corporation; INDUSTRIAL COTTON, INC., a New York corporation; TURN ON PRODUCTS, INC., a New York corporation; FOREVER 21, INC., a Delaware corporation; MAXX ACCESSORIES, INC., a New York corporation, <br><br>        Defendants. | No. C-06-3765 SC <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST KOLONAKI, INC. |

**I.   INTRODUCTION**

Plaintiff Levi Strauss & Co. ("Plaintiff" or "LS&CO") brought this action against seven companies, all of which have been dismissed except for Defendant Kolonaki, Inc. ("Defendant"). Plaintiff asserts causes of action for trademark infringement and dilution under federal and California law based on Defendant's use of a pocket stitching design that allegedly infringes Plaintiff's Arcuate trademark. Defendant was properly served with a summons and the Complaint on June 23, 2006, but failed to respond. Docket No. 11. As a result, on November 29, 2006, the Clerk of the Court entered default against Defendant. Docket No. 17.

Presently before the Court is Plaintiff's Motion for Default Judgment. For the reasons stated herein, the Court GRANTS Plaintiff's Motion for Default Judgment and AWARDS Plaintiff $75,600.00 in damages and $10,075.54 for attorneys' fees and costs. The Court further ENJOINS Defendant from manufacturing, distributing, or selling any goods that infringe LS&CO's Arcuate Stitching Design trademark.

**II. BACKGROUND**

Plaintiff Levi Strauss & Co. is a large apparel company which manufactures a variety of products, including traditional denim blue jeans. See Compl., ¶ 4. Defendant Kolonaki, Inc. operates a chain of retail clothing shops called "Georgiou." See id., ¶ 6. Plaintiff alleges that Defendant has been selling jeans and capri pants which use stitching designs in a way that is confusingly similar to LS&CO's trademarks. See Compl., ¶¶ 19-20. Plaintiff brought this case asserting causes of action for (1) federal trademark infringement under 15 U.S.C. §§ 1114-1117, (2) federal unfair competition under 15 U.S.C. § 1125, (3) federal dilution of a famous mark under 15 U.S.C. § 1125(c), (4) California trademark infringement and dilution under Cal. Bus. & Prof. Code §§ 14320, 14330, 14335, 14340, and (5) California unfair competition under Cal. Bus. & Prof. Code § 17200. See Compl., ¶¶ 37-57.

Plaintiff seeks actual damages of $25,200.00, which it asserts should be awarded in treble, for a total of $75,600.00. See Pl.'s Mot. for Default J., 5. With respect to attorneys' fees and costs, Plaintiff contends it is owed a total of $15,186.16.

1  See Gilchrist Decl., ¶ 8.  This amount is the sum of fees and
2  court costs in connection with preparing and serving the
3  complaint, correspondence, and requesting entry of default against
4  Defendant (fees related to the other parties have been deducted).
5  See id.  Plaintiff also seeks a permanent injunction to prevent
6  Defendant from making further commercial use of its trademarks.
7  See Compl., ¶ 75.

**III. LEGAL STANDARD**

After entry of default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b).  "However, entry of default does not automatically entitle the non-defaulting party to entry of a default judgment regardless of the fact that the effect of entry of a default is to deem allegations admitted."  In re Villegas, 132 B.R. 742, 746 (9th Cir. BAP 1991).  Rather, "the decision to enter a default judgment is discretionary."  Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988).

First, the Court must "access the adequacy of service of process on the party against whom default is requested."  Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  Once the Court determines that service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

1 |     due to excusable neglect, and (7) the strong policy
2 |     underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). Therefore, for purposes of this Motion, the Court accepts as true the facts as portrayed in the Complaint.

**IV.   DISCUSSION**

    **A.   Service of Process**

Service of process was adequate. Federal Rule 4(e) allows service upon an individual by personally delivering the summons and complaint. Fed. R. Civ. P. 4(e)(2). Rule 4(h) allows service upon a corporation by personally delivering the summons and complaint to the corporation's authorized agent. Fed. R. Civ. P. 4(h)(2). On June 23, 2006, a copy of the Complaint, Summons, and other related documents were personally delivered to Mr. George Georgiou, who was authorized to accept the documents. See Certificate of Service, Docket No. 11.

    **B.   Merits of the Motion**

Accepting the allegations in the Complaint as true, as it must, the Court finds that the Eitel factors weigh in favor of entering default judgment.

        1.   Prejudice to the Plaintiff

Plaintiff would suffer prejudice without entry of default judgment. If Defendant is allowed to continue manufacturing

4

products that infringe upon Plaintiff's trademarks, Plaintiff will face irreparable harm from trademark infringement and dilution. See Compl., ¶ 35.

### 2. Merits of Plaintiff's Substantive Claims

#### a. Trademark Infringement

In order to prevail on a trademark infringement claim, Plaintiff must establish "that it has a protected interest (or trademark right)" and that Defendant's usage is "likely to cause consumer confusion and thus infringe upon that interest." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). Both California and federal law focus on "the likelihood of confusion as to source or sponsorship." Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 791 (9th Cir. 1981).

As alleged in the Complaint, Plaintiff has a valid trademark for Arcuate stitching. See Compl., ¶¶ 13-16, Ex. B. Defendant has infringed on the trademarks by producing blue jeans and capri pants that are confusingly similar to those produced by LS&CO. Id., ¶¶ 19-20, Ex. D.

#### b. Unfair Competition

Plaintiff also alleges that Defendant competed unfairly in violation of 15 U.S.C. § 1125(a) by using LS&CO's designs and marks in a way that is likely to cause public confusion or mistake as to their connection or origin. See Compl., ¶ 43. "The test for false designation under the Lanham Act, as well as the common-law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.'" Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000). As discussed in the previous

5

section, Plaintiff has established that Defendant's blue jean and capri pant products created a likelihood of confusion.

### c. Trademark Dilution

Section 1125(c) of Title 15 was recently amended by the Trademark Dilution Revision Act of 2006. Pub. L. No. 109-312, 120 Stat. 1730 (2006). The statute provides a remedy for dilution by blurring and by tarnishment. Dilution by blurring is defined as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Id. at (c)(2)(B). Dilution by tarnishment is "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." Id. at (c)(2)(C). The statute requires that an owner prove the non-owner's use "is likely to cause dilution by blurring or dilution by tarnishment, regardless of the presence or absence of actual or likely confusion." Id. at (c)(1).

Section 1125(c) no longer requires the owner to demonstrate actual harm, a standard established by the Supreme Court in Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433-34 (2003). The revision changes the law to the pre-Moseley standard. Under that test, injunctive relief is available if a plaintiff can establish that (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998). Plaintiff has shown that its

6

trademarks are famous, Compl., ¶ 16; Defendant is using the marks in commerce, Compl., ¶ 19-20 and Ex. D; Defendant's use began after the mark became famous, Compl., ¶ 11; and the use is likely to cause dilution, Compl., ¶ 19. Furthermore, Defendant's trademark infringement was willful. Compl., ¶ 49. Defendant had prior knowledge of Plaintiff's trademarks and the similarity between both companies' products, but nonetheless continued to use the offending designs. See Gilchrist Decl., ¶ 2.

### 3. Sufficiency of the Complaint

Plaintiff's Complaint properly alleges the elements for the above causes of action. The Complaint sets forth the identity of LS&CO's mark, the extent to which LS&CO has used the mark, and the fame of the mark. See Compl., ¶¶ 11-16. The Complaint alleges that Defendant used Plaintiff's mark in connection with the sale of blue jeans and capri pants without LS&CO's consent. See id., ¶¶ 19-20. The Complaint further asserts that Defendant's use of LS&CO's marks is likely to confuse and deceive customers. See id., ¶ 19. The Complaint also alleges that LS&CO's trademarks have been diluted by Defendant's products. See id., ¶ 47. Accordingly, Plaintiff's Complaint is sufficient.

### 4. Other Factors

The other factors from Eitel weigh in favor of entering a default judgment. First, the amount of money at stake in this case is low in relation to the gravity of Defendant's conduct. Second, there is relatively little possibility of a dispute concerning material facts. Plaintiff has provided evidence of its valid trademark and Defendant's use of confusingly similar

7

stitching. Third, there is no indication that Defendant failed to respond due to excusable neglect. Though Defendant never answered the Complaint, a representative of Defendant discussed the matter with Plaintiff's counsel. See Gilchrist Decl., ¶ 2. Finally, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not preclude entry of default judgment. Rule 55 authorizes the Court to enter default in situations such as this. See Fed. R. Civ. P. 55; Kloepping v. Fireman's Fund, 1996 WL 75314 at *3 (N.D. Cal. Feb. 13, 1996). In light of the Eitel factors, this Court finds that entry of default judgment is appropriate.

### C. Remedies

Plaintiff has requested monetary damages, attorneys' fees and costs, and equitable relief in the form of a permanent injunction.

#### 1. Damages

Plaintiff seeks actual damages in the amount of $25,200.00, and thus total treble damages of $75,600.00. This amount is based upon evidence obtained from the president of Kolonaki, Inc., George Georgiou. The lead attorney for Plaintiff spoke with Mr. Georgiou who stated that he purchased 300 units of the infringing blue jeans from a vendor in China for $6.00. See Gilchrist Decl., ¶ 2. Georgiou was selling the jeans for $48.00 per pair, resulting in a gross profit of $42.00 per unit, a total of $12,600.00. See id. In addition, Plaintiff seeks damages for an infringing denim capri pant, which was also offered for sale at the Georgiou store. See id., ¶ 3. Plaintiff has estimated that Defendant purchased the same number of capri pants at the same

profit margin as the blue jeans and thus seeks additional damages of $12,600.00 for the capri pants. See id., ¶ 7. Plaintiff requested Defendant's gross profit and volume information for the capri pants, but Mr. Georgiou never gave Plaintiff this information and failed to attend the scheduled deposition. See id., ¶ 3-5. Defendant has had more than ample opportunity to answer Plaintiff's requests and should not be rewarded for his silence. Therefore, the Court will accept Plaintiff's estimation as to the damages for the capri pants.

As of the date Plaintiff submitted this motion, despite Plaintiff's repeated requests that Defendant stop selling the infringing jeans and capri pants, Defendant has continued to sell the products See id., ¶ 6. Defendant's violation is thus willful, which entitles Plaintiff to treble damages under 15 U.S.C. § 1117. In total, Defendant is liable for $75,600.00 in damages.

### 2. Attorneys' Fees and Costs

Subject to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover attorney's fees and costs for Defendant's willful trademark infringement, which qualifies as an "exceptional case." See Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th Cir. 2003). To determine a reasonable attorney fee award under section 1117(a), courts employ the lodestar method. See id.; Yahoo!, Inc. v. Net Games, Inc., 329 F.Supp.2d 1179, 1181 (N.D. Cal. 2004); Winterstein v. Stryker Corp. Group Life Ins. Plan, 2006 WL 1889901 (N.D. Cal. July 10, 2006). This method determines the reasonable attorney fee by "multiplying the number of hours the prevailing party reasonably expended on the

9

litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).

Plaintiff has accounted for $14,311.50 in attorneys' fees and $874.66 in costs for a total of $15,186.16. The amount for costs is reasonable in light of the funds Plaintiff expended for court filings, service of process, and collecting evidence. The amount for attorneys' fees is comprised of over 40 hours of attorney time and several hours of legal assistant time. One attorney, a partner, was billed at approximately $440 per hour, the other attorney, an associate, was billed at approximately $276 per hour, and the legal assistant, a paralegal, was billed at approximately $104 per hour. While these rates are higher than those set in Yahoo!, other cases in this District have set significantly higher rates based on an attorney's skill, experience, and reputation. See e.g., Cancio v. Financial Credit Network, Inc., 2005 WL 1629808 (N.D. Cal. July 6, 2005). Though most of the attorney time billed to this matter appears to be reasonable, the Court finds that the billing of 23.5 hours of associate time for the preparation of a motion for default judgment, see Gaudreau Decl., ¶ 4, is too high in light of the fact that the motion is similar to one reviewed by this Court in a prior case for LS&CO in which the same associate only billed 2.1 hours. The Court will therefore allow 5.0 hours of associate time for the current motion. It may have required more time to prepare the instant motion than the prior motion because of the additional damages section, but could not reasonably have taken over 11 times as long. As a result, the Court finds a reasonable amount for

10

1  attorneys' fees is $9,200.88.  The Court will award Plaintiff full
2  costs of $874.66.  Thus, the total amount for fees and costs is
3  $10,075.54.

### 3. Injunctive relief

Plaintiff has demonstrated that its trademark rights are being violated by Defendant.  Under the Lanham Act, the Court may grant an injunction.  See 15 U.S.C. § 1116(a); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases").  Furthermore, injunctive relief is available in the default judgment setting.  See e.g., Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494 (C.D. Cal. 2003).  This Court finds that an injunction is appropriate because it will best serve to protect Plaintiff from the risk of continuing irreparable harm.

**V. CONCLUSION**

The Court GRANTS Plaintiff's Motion for Default Judgment.  As a consequence, the Court AWARDS Plaintiff $75,600.00 for damages and $10,075.54 for attorneys' fees and costs.  The Court also GRANTS Plaintiff's request for an injunction.

Good cause appearing, Defendant, Kolonaki, Inc., its principals, agents, affiliates, employees, officers, directors, servants, privies, successors, assigns, and all persons acting in concert or participating with it or under its control who receive actual notice of this Order, are hereby permanently ENJOINED and RESTRAINED, directly or indirectly, from doing, authorizing or

11

procuring any persons to do any of the following until such time as this Order is dissolved or modified by further order:

(1) Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying any products that display any stitching or other design in the shape illustrated in Exhibit D of the Complaint, or any stitching or other design that is substantially similar to the Plaintiff's Arcuate trademark;

(2) Otherwise violating the rights of Plaintiff Levi Strauss & Co. in and to the Arcuate trademark; and

(3) Assisting, aiding or abetting any person or entity engaging in or performing any act prohibited by this Order.

IT IS SO ORDERED.

Dated: April 17, 2007

UNITED STATES DISTRICT JUDGE